# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 10-446

DAVID EUGENE GARCIA

VERSUS

MICHELLE RUSHING GARCIA

**********

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-2846 "M"
HONORABLE PHYLLIS M. KEATY, DISTRICT JUDGE**

**********

**JAMES T. GENOVESE
JUDGE**

**********

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS.

**Michelle Rushing Garcia
In Proper Person
212 Vivian Drive
Lafayette, Louisiana  70508
(337) 212-6834
DEFENDANT/APPELLANT**


**Julia Autin
Susan L. Theall
The Theall Firm, LLC
1304 Lafayette Street
Lafayette, Louisiana  70501
(337) 264-9000
COUNSEL FOR PLAINTIFF/APPELLEE:**
    **David Eugene Garcia**

**GENOVESE, Judge.**

In this domestic case, Michelle Rushing Garcia appeals the November 16, 2009 judgment of the trial court rendered as a result of hearings held pursuant to the filing of three contempt motions involving she and her former husband, David Eugene Garcia. For the following reasons, we affirm in part, reverse in part, and remand this matter to the trial court with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

David Eugene Garcia (David) and Michelle Rushing Garcia (Michelle) were married on January 25, 1992. Their minor daughter, Kelsey, was born on July 3, 1994, and their minor son, Bryson, was born on April 22, 1999. The parties separated and divorced in 2004, at which time they entered into a Stipulated Consent Judgment wherein child support was agreed upon. The parties also adopted a Joint Custody Implementation Plan which designated Michelle as the domiciliary parent. In 2006, David filed a Rule to Change Custody and for Contempt of Court against Michelle. Michelle countered by filing a Rule to Modify Custody Implementation Plan, to Modify Child Support, and for Contempt against David. A plethora of cross-motions were filed thereafter. Ultimately, on July 18, 2008, the parties entered into a Consent Judgment, stipulating to child support, shared custody with David and Michelle being co-domiciliary parents of the minor children, and counseling for Kelsey.

The litigation giving rise to this appeal began on August 28, 2008, when David filed a Rule for Contempt, to Appoint a Counselor for the Minor Child, and to Modify Child Support. David alleged that Michelle violated the July 18, 2008 Consent Judgment by refusing to agree to a counselor for Kelsey, by "refus[ing] to communicate information regarding the children's school and meetings and fail[ing] to communicate via [e-mail] in a calm and businesslike manner[,]" by removing

Bryson from day care without David's consent, and by refusing to pay the children's school fees and medical expenses.

On October 9, 2008, Michelle filed a Cross Rule for Contempt and to Make Past Due Child Support Executory. Michelle alleged that David was delinquent in paying child support and that he violated the July 18, 2008 Consent Judgment by "fail[ing] to discuss the selection of a counselor for" Kelsey, by making a unilateral decision to bring Kelsey to a counselor without first consulting her, and by allowing his current wife, Haley, to take "disciplinary actions against Kelsey by yelling and screaming at [her]."

David filed an Amended Rule for Contempt and to Modify Child Support on April 7, 2009. David alleged that Michelle had "failed to ensure that Kelsey receive counseling[,]" had "continually failed and refused to communicate information regarding Kelsey . . . via [e-mail]," had "undermined Bryson's relationship with [him]" by making negative comments about him to Bryson, and had "fail[ed] to pay costs that should [have been] paid from the amount of child support she receives[.]" Further, David requested that Obligation Worksheet B[1] be used, that he be allowed to pay for all of Bryson's school and medical expenses, and that Michelle be ordered to pay for all of Kelsey's school and medical expenses.

The trial court heard testimony and received evidence on September 30, 2009, October 2, 2009, October 13, 2009, and November 16, 2009. Following the last day of trial, the trial court rendered its judgment finding Michelle in contempt of court for "fail[ing] to communicate via e-mail, failing to ensure that Kelsey Garcia is placed in counseling, for removing Bryson Garcia from day care and failing to pay day care

---

[1]Louisiana Revised Statutes 9:315.20 contains Obligation Worksheets A & B. Obligation Worksheet B is implemented when parents share custody.

and failing to pay Bryson Garcia's school lunches, and by supporting the lack of relationship between Kelsey Garcia and her father." The trial court judgment ordered that effective April 7, 2009, child support would be calculated using Obligation Worksheet B, that effective October 1, 2009, David would pay all school and medical expenses relative to Bryson, and that Michelle would pay all school and medical expenses relative to Kelsey. The trial court judgment ordered that "the visitation between [David] and his daughter, [Kelsey, be] reinstated as originally set forth in the Joint Custody Implementation Plan signed and filed on July 18, 2008." Michelle appeals.

## ISSUES

Michelle urges this court to consider:

(1) whether the trial court erred in finding Michelle in contempt of court for violating the July 18, 2008 Consent Judgment by: (a) failing to communicate via e-mail; (b) failing to ensure that Kelsey was placed in counseling; (c) removing Bryson from day care and failing to pay day care; (d) failing to pay for Bryson's school lunches; and (e) failing to support the relationship between Kelsey and her father, David;

(2) whether the trial court erred in ordering the use of Obligation Worksheet B to calculate the parties' child support obligation;

(3) whether the trial court erred in ordering that David be responsible for 100% of Bryson's school clothes and shoes, school supplies, school meals, school fees, medical expenses, and extracurricular expenses and that Michelle be responsible for 100% of Kelsey's school clothes and shoes, school supplies, school meals, school fees, medical expenses, and extracurricular expenses;

3

(4) whether the trial court erred in ordering that the seven-and-seven visitation schedule relative to Kelsey be reinstated; and

(5) whether the trial court erred in ordering that Michelle and David attend parenting classes.

## LAW AND DISCUSSION

### *Standard of Review*

As set forth by this court in *LeBlanc v. LeBlanc*, 06-1307, p. 4 (La.App. 3 Cir. 3/7/07), 953 So.2d 115, 119-20, the applicable appellate standard of review is as follows:

> An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This is especially applicable in a child custody dispute wherein appellate courts accord substantial deference to the trial judge's conclusions. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." *Deason v. Deason*, 99-1811, p. 12 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 220 (quoting *State in the Interest of Sylvester*, 525 So.2d 604, 608 (La.App. 3 Cir.1988))(citing *Bagents v. Bagents*, 419 So.2d 460 (La.1982)).

### *(1) Contempt of Michelle*

Michelle contends that the trial court erred in finding her in contempt of court for violating the July 18, 2008 Consent Judgment. Louisiana Code of Civil Procedure Article 221 defines contempt of court as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive[.]" Pursuant to La.Code Civ.P. art. 224(2), constructive contempt is "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." Constructive contempt "must be based on a finding that the accused violated

4

an order of the court 'intentionally, knowingly, and purposefully, without justifiable excuse.'" *Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (quoting *Brunet v. Magnolia Quarterboats, Inc.*, 97-187, p. 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313, *writ denied*, 90-990 (La. 5/29/98), 720 So.2d 343). "A trial court is vested with great discretion to determine whether a party should be held in contempt for wilfully disobeying a trial court judgment." *Barnes v. Barnes*, 07-27, p. 9 (La.App. 3 Cir. 5/2/07), 957 So.2d 251, 257 (citing *Fink v. Bryant*, 01-987 (La. 11/28/01), 801 So.2d 346).

## *(a) E-mail*

At trial and in brief, Michelle admits that she stopped communicating with David via e-mail because she began receiving harassing and derogatory e-mails from him. Though Michelle claims that she did not believe David was the author of said e-mails, she unilaterally decided that she would no longer communicate with David via e-mail. Instead, Michelle either mailed or hand delivered information she deemed pertinent to David while she claims that she waited for her attorney to make arrangements with David on an alternate means of communication. We find no error in the trial court's determination that Michelle is in contempt of court for failing to communicate with David via e-mail "concerning all factors affecting the health, education, and welfare of the children."

## *(b) Counseling for Kelsey*

Michelle asserts, in brief, that she originally requested that Kelsey have counseling; however, the July 18, 2008 Consent Judgment "stated [that] Kelsey should start counseling with no stipulations as to a time period and how a counselor was to be chosen." She further contends that she made efforts as early as July 22,

5

2008, via e-mail, to coordinate with David on the selection of a counselor; however, David never responded to her e-mail.

David alleges that he made several attempts to enroll Kelsey in counseling; however, his efforts were thwarted by Michelle. In brief, David contends that "[t]he evidence supports a finding of wilful violation of a court order without justifiable excuse." The trial court found that David was more credible than Michelle. That determination is within the discretion of the trial court. After reviewing the evidence in that regard, we cannot say that the trial court erred in its determination that Michelle is the party responsible for violating the July 18, 2008 Consent Judgment by failing to enroll Kelsey in counseling.

### (c) Bryson's day care

According to the terms of the July 18, 2008 Consent Judgment, Bryson was to be enrolled in day care unless and until both Michelle and David decided to remove him. Further, Michelle was responsible for paying the cost of Bryson's day care. Admittedly, Michelle did not enroll Bryson in day care. According to Michelle, Bryson was not allowed enrollment in day care due to an outstanding balance occurring as a result of David not being current in paying his child support obligation.

David asserts that Michelle's admission is inexcusable and unjustifiable, considering the fact that a specific sum for net child-care costs was included in the child support calculation. Consequently, Michelle was responsible for paying for day care out of the money she received from him as child support, and her failure to do so was a violation of the Consent Judgment. We agree. Considering Michelle's clear understanding of her obligations under the Consent Judgment and her own admission, we find no abuse of discretion in the trial court's decision to hold Michelle in

6

contempt of court for failing to pay the costs of day care in order to keep Bryson enrolled therein.

### (d) Bryson's school meals

As the domiciliary parent, Michelle was also responsible for paying the expenses associated with the meals Bryson ate at school from the child support she received. David testified that Bryson's school account ran out of money on more than one occasion and, though he would attempt to get Michelle to pay the expenses associated with Bryson's meals at school, he ultimately sent money to Bryson's school because Michelle did not. David introduced into evidence an e-mail wherein he notified Michelle that Bryson's account was out of money, to which he testified that Michelle did not respond. Though Michelle disputed David's allegations that she allowed Bryson's school account to become delinquent, she does, in brief, admit that "she was not aware that Bryson was also eating breakfast at school on the weeks that he was in [David's] custody, [and] she was only providing enough money to the school to cover his lunches, this is why his account was depleted on occasion without [her] knowledge." The trial court accepted the testimony and evidence offered by David. This determination was based upon the parties' credibility and was within the discretion of the trial court. After reviewing the evidence in the record, we do not find that the trial court erred or abused its discretion in its determination that Michelle was in contempt of court for her failure to pay for Bryson's meals at school.

### (e) Kelsey's relationship with David

Michelle denied ever sabotaging the relationship between Kelsey and David. However, in October of 2008, after an argument between David and Kelsey culminated in Kelsey being asked to leave his home and not return until she could be

7

respectful, Michelle photographed Kelsey as she stood outside on the curb in front of David's home. Kelsey did not return to David's home until the trial court ordered Michelle to facilitate visitation after the hearing held October 13, 2009. David testified that Kelsey intimated that Michelle shared with her that David was delinquent in paying child support.

The trial court heard testimony over four days and even interviewed Kelsey on the final day of trial. After thoroughly reviewing the record and the divergent versions of events contained therein, we find no abuse of the trial court's discretion in concluding that Michelle was in violation of the July 18, 2008 Consent Judgment by failing to foster the relationship between Kelsey and David.

### (2) Obligation Worksheet B

The November 16, 2009 trial court judgment ordered that, effective April 7, 2009, David's child support obligation be reduced from $1,347.00 per month to $877.50 per month and that, beginning September 30, 2009, David's child support obligation be further reduced to $496.11 per month. In brief, Michelle complains that the trial court's imposition of Obligation Worksheet B to calculate child support is an illegal punishment for her contempt of court. Having reviewed the record, we agree.

At the end of trial, during its oral reasons for judgment, the trial court was questioned whether its ruling was for child support to be calculated using Obligation Worksheet B, to which the trial court responded:

> Worksheet B. And it's Worksheet B, it's part of the penalty for the [c]ontempt, to tell you the truth. I'm not fining Mom. I'm not fining her, I'm not ordering her to go to jail or suspending it for any length of time or anything, but I am ordering the parties to follow Worksheet B, because I do not want to fine Mom and I don't want to give her a jail sentence. And it's not a gender thing. It's just because there's [sic] too

8

many contempts and I need her to be available for Kelsey.

In *Ezernack v. Ezernack*, 04-1584 (La.App. 3 Cir. 4/6/05), 899 So.2d 198, the trial court allocated the balance due on an automobile as the husband's contempt of court punishment. This court reversed the trial court stating:

> The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in La.R.S. 13:4611. It provides that a person who disobeys an order of the court may be punished "by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both." La.R.S. 13:4611(1)(d). "Proceedings for contempt must be strictly construed, and the law does not favor extending their scope." *George v. Nero*, 02-1140, p. 4 (La.App. 3 Cir. 3/5/03), 839 So.2d 1085, 1087. A contempt proceeding is designed for vindication of the dignity of the court rather than for the benefit of a litigant. *Davis v. Harmony House Nursing Home*, 35,080 (La.App. 2 Cir. 10/31/01), 800 So.2d 92, *writ denied*, 01-3162 (La.2/22/02), 810 So.2d 1143.

*Id*. at 201.

Just as the punishment in *Ezernack* was "not authorized as a form of punishment which the court may mete out for the contempt[,]" the imposition of Obligation Worksheet B is not an authorized punishment under La.R.S. 13:4611 for Michelle's contempt. *Id*. As such, the trial court exceeded its authority. Accordingly, the portion of the November 16, 2009 judgment ordering the use of Obligation Worksheet B to calculate David's child support is reversed, and we remand the contempt matter to the trial court for it to resentence Michelle in accordance with La.R.S. 13:4611.

### *(3) Kelsey and Bryson's school and medical expenses*

Based upon the foregoing finding that the trial court exceeded its authority in ordering the use of Obligation Worksheet B to calculate child support, we likewise find the trial court erred in requiring Michelle to pay for all of Kelsey's school and medical expenses and David to pay for all of Bryson's school and medical expenses.

9

We find it noteworthy that our review of the record reveals that in its oral ruling made in open court on the same day that the written judgment was signed, the trial court did not articulate a ruling on this issue; however, this ruling appears in the written judgment signed by the trial court. Regardless, the requirement that Michelle and David each pay for all of the school and medical expenses for Kelsey and Bryson, respectively, is couched in the ruling that Michelle and David share an equal child support obligation which utilizes Obligation Worksheet B to determine child support. Having reversed that determination, we likewise reverse the ruling requiring the parties' payment of the children's school and medical expenses.

Considering our reversal of the trial court's judgment relative to child support, including Kelsey and Bryson's school and medical expenses, we find it necessary to clarify our instructions to the trial court. The record reveals that pursuant to a Consent Judgment dated December 7, 2004, David paid $600.00 per month for child support. Pursuant to a Rule to Modify Custody Implementation Plan, to Modify Child Support, and for Contempt filed by Michelle on October 31, 2006, an Intake Conference was held on October 16, 2007, wherein the hearing officer recommended that David pay $1,297.00 in child support for November and December of 2006, and $1,397.00 in child support beginning on January 1, 2001.[2] The parties entered into a Consent Judgment on July 18, 2008; however, this judgment is silent on the issue of child support and addresses the shared custody of the children.

On August 28, 2008, David filed a Rule for Contempt, to Appoint a Counselor for the Minor Child, and to Modify Child Support. Michelle filed a Cross Rule for Contempt and to Make Past Due Child Support Executory on October 9, 2008. David

---

[2]Both Michelle and David filed Objections to the recommendations made by the hearing officer on October 19, 2007.

then filed an Amended Rule for Contempt and to Modify Child Support on April 7, 2009.[3]

Therefore, we remand this matter to the trial court with the instruction that it address the repetitive motions filed by the parties relative to child support which the record reveals have not been addressed by the trial court since the hearing officer made its recommendations on October 16, 2007.

### (4) Kelsey's visitation with David

In October of 2008, an argument between David and Kelsey culminated in Kelsey being asked to leave and not return until she could be respectful. Very divergent testimony was heard about the facts and reasoning behind why David did not have visitation with Kelsey for over a year following this incident. On appeal, Michelle argues that the trial court erred in ordering a reinstatement of the seven-and-seven visitation schedule relative to Kelsey. David asserts that this issue is not properly before this court on appeal. We agree.

On July 18, 2008, the parties entered into a Consent Judgment wherein David and Michelle agreed to the seven-and-seven shared custody visitation schedule relative to Kelsey and Bryson. Presently before this court is the November 16, 2009 judgment. Therefore, we will not address the complaints raised by Michelle relative to this issue.

### (5) Parenting Classes

On October 13, 2009, the trial court ordered Michelle and David to see a parenting coordinator in order to learn "how to parent [Kelsey] and Bryson [and] on

---

[3]Notably, this is the first request for the utilization of Obligation Worksheet B to calculate child support since the parties began sharing custody in July of 2008; however, also noteworthy is the fact that when this request was made, Kelsey was not abiding by the seven-and-seven visitation schedule with David.

how to communicate." A Temporary Order incorporating same was signed October 22, 2009. Further, the November 16, 2009 judgment incorporated the ruling that "Connie LeBlanc shall continue in her position as parenting co-ordinator and render periodic reports to the [c]ourt as she deems necessary or as requested by the [c]ourt."

Michelle argues in brief that "with the reduction in child support[,]" she cannot afford to continue attending parenting classes because the expense of doing so "is putting an even bigger financial burden on already strained household finances." David asserts this argument "should be ignored" because it "is an improper attempt to present additional evidence . . . which was not presented to the trial court." While this court concurs with David's assertions, we also find it necessary to point out that the parties' tumultuous relationship necessitated the trial court's order that they attend parenting classes. Louisiana Revised Statutes 13:4611(1)(e)(iii) states that "when a parent has violated a visitation order, the court may order . . . one or both parents to attend counseling or mediation." Thus, there was no abuse of discretion by the trial court in this regard.

**DECREE**

For the foregoing reasons, we affirm the judgment of the trial court in all respects, except as to the punishment for Michelle's contempt of court in ordering that Obligation Worksheet B be used to calculate David's child support obligation. In reversing that aspect of the judgment, we remand this matter to the trial court for resentencing relative to Michelle's contempt of court and for consideration of the issue of child support. We assess costs of this appeal equally between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

12